UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APRIL LINN LUCAS,                                    Case No. 18-10087

                Plaintiff,                    Sean F. Cox
v.                                                   United States District Judge

COMMISSIONER OF SOCIAL                               Stephanie Dawkins Davis
SECURITY,                                            United States Magistrate Judge

             Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 13, 17)**

## I.    PROCEDURAL HISTORY

A.    Proceedings in this Court

On January 9, 2018, plaintiff April Linn Lucas filed the instant suit.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Sean F. Cox referred this matter to the undersigned for the purpose of reviewing the Commissioner's unfavorable decision denying plaintiff's claim for a period of disability and disability insurance benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 13, 17).

B.    <u>Administrative Proceedings</u>

Lucas filed an application for a period of disability and disability insurance benefits on February 13, 2015, alleging disability beginning on February 9, 2015. (Tr. 13).[1]  The claims were initially disapproved by the Commissioner on November 4, 2015.  (*Id.*).  Lucas requested a hearing and on November 15, 2016, plaintiff appeared, with counsel, before Administrative Law Judge ("ALJ") Therese Tobin, who considered the case *de novo*.  (Tr. 13-20).  In a decision dated February 7, 2017, the ALJ found that Lucas was not disabled.  (Tr. 20).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on November 20, 2017, denied plaintiff's request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, and that the findings of the Commissioner be **REVERSED AND REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

---

[1] The Administrative Record appears on the docket at entry number 9.  All references to the same are identified as "Tr."

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Lucas, born May 4, 1972, was 42 years old on the alleged disability onset

date.  (Tr. 19).  She lives by herself and has past relevant work as a bookkeeper.

(Tr. 18, 36).  She alleges she is unable to work due to pain, lack of sleep,

migraines, and depression.  (Tr. 32-33).

The ALJ applied the five-step disability analysis and found at step one that

Lucas had not engaged in substantial gainful activity since February 9, 2015, the

alleged onset date.  (Tr. 15).  At step two, the ALJ found that plaintiff's

fibromyalgia and obesity were "severe" within the meaning of the second

sequential step, but that her restless leg syndrome, migraines, and depression were

nonsevere.  (*Id.*).  However, at step three, the ALJ found no evidence that

plaintiff's impairments singly or in combination met or medically equaled one of

the listings in the regulations.  (Tr. 16).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC")

as follows:

> After careful consideration of the entire record, I find that
> the claimant has the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b)
> except: the claimant would require a sit or stand option
> with changing positions every 20-30 minutes when
> needed and without disturbing the workplace.  The
> claimant could occasionally climb ramps and stairs.  She
> could never kneel, crouch, crawl, or climb ladders, ropes,

> or scaffolds.  She could occasionally balance and stoop.
> She should avoid all exposure to unprotected heights and
> moving mechanical parts.

(Tr. 16).  At step four, the ALJ found that plaintiff was able to perform past

relevant work as a bookkeeper.  (Tr. 18).  The ALJ then concluded that Lucas was

not disabled.  (Tr. 20).

  B. <u>Plaintiff's Claims of Error</u>

 According to Lucas, the ALJ's decision should be reversed because the ALJ

did not properly consider her fibromyalgia diagnosis and did not properly weigh

her treating physician's opinion in light of the diagnosis.  (Dkt. 13).  She also

argues that the ALJ erred in the consideration of her mental impairment.

 Specifically, Lucas contends that the ALJ erred because she relied on the

lack of objective testing to determine the severity of her fibromyalgia.  (*Id.* at p.

11-12).  The ALJ noted that she presented with complaints one would expect from

fibromyalgia: "The claimant treated with Andrew Marcus, M.D., with complaints

of diffuse body pains, including in her neck and back pain.  The claimant presented

with multiple trigger points and she was subsequently diagnosed with fibromyalgia

and treated with medication." (*Id.* at p. 12; Tr. 17).  Lucas contends that the ALJ

dismissed this evidence because she did not have examination findings to match; to

wit, she presented with normal gait, normal muscle strength, non-tender

extremities, normal sensation, and normal musculoskeletal range of motion.  Citing

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243-44 (6th Cir. 2007), in support, Lucas contends that this analysis ignores the nature of fibromyalgia.

According to Lucas, the ALJ made the same error in weighing her treating physician, Dr. Marcus's opinion. The ALJ adopted Dr. Marcus's lifting, crouching, and climbing limitations. However, the ALJ rejected other limitations because the limitations were not supported by objective examination findings. (*Id.* at p. 14). Specifically, the ALJ stated, "I accord little weight to Dr. Marcus' remaining restrictions because the limitations are inconsistent with the medical evidence, including the claimant's presentation with a normal gait, normal motor strength, non-tender extremities, normal sensation, and normal musculoskeletal range of motion. . . ." (*Id.*; Tr. 17). Lucas asserts that this analysis ignores the nature of fibromyalgia. Additionally, she contends that this analysis does not comport with the treating physician rule because the ALJ did not give good reasons for discounting the opinion since the ALJ relied on the absence of evidence which would not be expected to exist in a fibromyalgia case. (*Id.* at p. 15-16). Further, Lucas notes that there is no medical opinion to the contrary in the record.

She also argues that the ALJ improperly considered her activities, which include the ability to do laundry, clean the floors, do light weeding, drive a car, go bowling, perform yoga, and play card games. (*Id.* at p. 13). However, she indicated that she could perform these activities only on "good days," which is

5

consistent with a person diagnosed with fibromyalgia because symptoms can "wax and wane." (*Id.*; SSR 12-1p).

Lucas next argues that the ALJ should have considered her depression throughout the analysis despite having determined that depression was a non-severe impairment at Step Two of the sequential analysis. (*Id.* at p. 16). After Step Two, the ALJ only mentioned the "mental issues" in passing in the RFC analysis. Lucas contends that the ALJ rendered her own independent medical conclusions on depression. The ALJ rejected consultative examiner Dr. Bray's opinion that Lucas was moderately impaired with regard to her mental ability to withstand stress and pressure associated with day-to-day work activities. (*Id.* at p. 17; Tr. 295). The ALJ gave this opinion little weight based on her finding that "the restrictions were excessive in light of the clinical exam findings, including the claimant's presentation as pleasant with an appropriate affect." (*Id.*; Tr. 16). Having reviewed the doctor's opinion but coming to her own independent conclusion, Lucas contends that the ALJ impermissibly played doctor. She also argues that a pleasant presentation and appropriate affect at a doctor's examination is unrelated to a claimant's ability to handle workplace stress and pressure. (*Id.* at p. 18).

6

C.    Commissioner's Motion for Summary Judgment

The Commissioner argues that the ALJ reasonably found that Lucas's subjective complaints of physical disability were not entirely consistent with the objective medical evidence or with her activities of daily living and that the ALJ reasonably gave partial weight to Dr. Marcus's opinion because it was not consistent with the objective medical evidence.  (Dkt. 17, at p. 6-7).

The Commissioner begins by distinguishing this case from *Rogers*. According to the Commissioner, unlike the ALJ who erred in Rogers, the ALJ here did not use objective evidence to reject Plaintiff's treating physician's diagnosis of fibromyalgia.  (*Id.* at p. 7; *Brasfield v. Comm'r of Soc. Sec.*, 2018 WL 3914501, at *1 (E.D. Mich. Aug. 16, 2018) (citing *Rogers*, 486 F.3d at 245)).  Rather, the ALJ found fibromyalgia to be a severe impairment.  The Commissioner asserts that even where fibromyalgia was a severe impairment, "it was not at all improper for the ALJ to consider [the plaintiff]'s normal gait, muscle strength, and tone in assessing her subjective complaints and, ultimately, in formulating her RFC."  (*Id.* at p. 8) (citing *Hayward v. Comm'r of Soc. Sec.*, 2015 WL 7749173, at *6 (E.D. Mich. Sept. 21, 2015), *report and recommendation adopted*, 2015 WL 7733448 (E.D. Mich. Nov. 30, 2015); *Bouza v. Colvin*, 2017 WL 362670, at *5 (E.D. Mich. Jan. 13, 2017)).  Thus, says the Commissioner, there was no error in the ALJ's

comparison of Lucas's subjective complaints to the objective medical evidence simply because she has fibromyalgia.

The Commissioner argues that the ALJ did not err in discounting portions of Dr. Marcus's opinion because those portions are inconsistent with the objective medical evidence. (*Id.* at p. 9). The Commissioner cites case law indicating that clinical findings such as gait and strength are relevant and can be considered in evaluating a claimant's functionality even when the claimant has fibromyalgia. (*Id.*). According to the Commissioner, the ALJ also reasonably found that Lucas's activities, even though intermittent, were inconsistent with her allegations of disability. (*Id.* at p. 10).

Regarding Lucas's argument on the consideration of her depression, the Commissioner contends that substantial evidence supports the ALJ's finding that Lucas does not have mental limitations. The Commissioner asserts that the ALJ did not make independent medical finding on Lucas's lack of mental limitations; the State agency psychologist, Dr. Williams-White, who reviewed the record including Dr. Bray's opinion, concluded that Lucas did not have a severe mental impairment or mental limitations. (*Id.* at p. 12-13; Tr. 53, 58). Dr. Williams-White's opinion supports the ALJ's finding that Lucas does not have mental limitations.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

     If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health

& Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals

and the district court may look to any evidence in the record, regardless of whether

it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245

F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the

ALJ or the reviewing court discuss every piece of evidence in the administrative

record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)

("[a]n ALJ can consider all the evidence without directly addressing in his written

decision every piece of evidence submitted by a party.") (internal citation marks

omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526

(6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis set forth at 20 C.F.R. §§ 404.1520, 416.920. Essentially, the ALJ must determine whether: (1) the plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to perform past relevant work, whether there is work in the national economy that the plaintiff can perform. (*Id.*). "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.     Analysis and Conclusions

 In the view of the undersigned, the ALJ erred in assessing Lucas's fibromyalgia and her treating physician's opinion. Generally, while an ALJ may consider objective evidence such as normal gait and normal strength in evaluating symptoms, as discussed more fully herein, the ALJ should not rely on the lack of objective evidence when evaluating the symptoms of fibromyalgia. Here, the ALJ did just that in evaluating Dr. Marcus's opinion.

The opinion of a treating physician should be given controlling weight if it is: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2). Once an ALJ has determined that a treating source opinion is not entitled to controlling weight, the ALJ must give good reasons for the weight accorded to the opinion. The reasons provided must be supported by the evidence in the case record and must be sufficiently specific to make clear to

any subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight. *Gayheart v. Comm'r of Soc. Sec.*,

710 F.3d 365, 376 (6th Cir. 2013). The ALJ is to discuss certain factors, which

include, (1) the length of the treatment relationship and frequency of examination,

(2) the nature and extent of the treatment relationship, (3) supportability of the

opinion, (4) consistency of the opinion with the record as a whole, and (5) the

specialization of the treating source. *Id.; see also Wilson,* 378 F.3d at 544; 20

C.F.R. § 404.1527(c). Failure to analyze a treating source opinion under the two-

prong controlling weight test amounts to the failure to provide good reasons for

giving that opinion less than controlling weight. *Gayheart* at 376-77.

Lucas's fibromyalgia diagnosis complicates the treating physician analysis.

*See Eberhardt v. Comm'r of Soc. Sec.*, 2017 WL 971705 (E.D. Mich. Feb. 16,

2017) (citing *Cooper v. Comm'r of Soc. Sec.,* 2014 WL 4606010, at *15 (E.D.

Mich. June 17, 2014) ("The intersection of treating source law and fibromyalgia

claims presents particular difficulties for the ALJ and the reviewing court."). The

Court of Appeals for the Sixth Circuit has recognized the difficulty that

fibromyalgia presents for disability determination:

> In stark contrast to the unremitting pain of which
> [fibromyalgia] patients complain, physical examinations
> will usually yield normal results-a full range of motion,
> no joint swelling, as well as normal muscle strength and
> neurological reactions. There are no objective tests
> which can conclusively confirm the disease; rather it is a

> process of diagnosis by exclusion and testing of certain
> 'focal tender points' on the body for acute tenderness
> which is characteristic in [fibromyalgia] patients.

*Preston v. Sec'y of Health & Human Servs.,* 854 F.2d 815, 817–18 (6th Cir. 1988). "As it is difficult to pin down objective medical evidence to support a diagnosis of fibromyalgia, it is even more difficult to produce objective medical evidence that shows the degree to which fibromyalgia limits the functioning of its victim." *Laxton v. Astrue,* 2010 WL 925791, *6 (E.D. Tenn. 2010). The Sixth Circuit and the Social Security Administration have recognized that it makes little sense to rely on a lack of objective medical evidence when addressing both the diagnosis and the treatment of fibromyalgia. *See e.g., Rogers v. Comm'r,* 486 F.3d 234, 243–44 (6th Cir. 2007) ("[I]n light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant ..."); *Preston,* 854 F.2d at 820 (noting that fibromyalgia can be a severe disabling impairment, and objective tests are of little help in determining its existence or its severity). Indeed, the Sixth Circuit has issued strong opinions on this point, reversing ALJ's findings because of their undue emphasis on the lack of objective evidence. *Cooper*; 2014 WL 4606010, at *16. Test results showing normal strength, gait, or range of motion are not convincing evidence of lack of disability in these kinds of cases.

*Cooper*, 2014 WL 4606010, at *17 (citing *Rogers,* 486 F.3d at 248 and *Preston*, 854 F.2d at 820).

Taking the above cases into account, the ALJ in this case did not properly assess Dr. Marcus's opinion.  The ALJ's basis for rejecting a portion of the opinion is the lack of objective medical evidence supporting the conclusions.  Specifically, the ALJ stated that Dr. Marcus's limitations are inconsistent with the medical evidence, including Lucas's presentation with a normal gait, normal motor strength, non-tender extremities, normal sensation, and normal musculoskeletal range of motion.  (Tr. 17).  This reason does not qualify as a good reason under the circumstances and therefore does not comport with the treating physician rule.  The ALJ's rejection of Dr. Marcus's opinion as inconsistent with objective evidence "obviously stems from his fundamental misunderstanding of the nature of fibromyalgia."  *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 861 (6th Cir. 2011) (citing *Rogers*, 486 F.3d at 243)).  Again, the Sixth Circuit has recognized that fibromyalgia patients generally do not present "objectively alarming signs."  *Rogers*, 486 F.3d at 243; *see also Swain v. Comm'r of Soc. Sec.,* 297 F.Supp.2d 986, 990 (N.D. Ohio 2003) (observing that "[f]ibromyalgia is an 'elusive' and 'mysterious' disease" which causes "severe musculoskeletal pain").  Rather, fibromyalgia patients, like Lucas, typically "manifest normal muscle strength and neurological reactions and have a full range of motion."

*Preston,* 854 F.2d at 820.  In the absence of other objectively ascertainable manifestations, the process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials.  *Id.*; *Swain,* 297 F.Supp.2d at 990.  Dr. Marcus noted that Lucas tested positive for tenderness at 18 of 18 focal points, and he ruled out the possibility of other causes for Lucas's symptoms.  (Tr. 261, 317).  Thus, the ALJ's contention that the treating physician's assessments and opinion were unsupported by objective medical evidence was "simply beside the point."  *Kalmbach*, 409 Fed. Appx. at 862.

Special considerations for fibromyalgia aside, the undersigned is also unpersuaded that the ALJ provided the requisite good reasons for affording the treating source opinion less than controlling weight, in general, or that such failure was harmless.  There are no countervailing or contradictory medical opinions in the record to which the ALJ pointed in support of her rejection of Dr. Marcus's opinion.  As noted above, an ALJ must accord "controlling weight" to a treating physician's opinion if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  *See Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2).  Here, Dr. Marcus's diagnosis of fibromyalgia is supported by medically acceptable clinical and diagnostic techniques that pertain to the

18

diagnosis of fibromyalgia, and his opinion regarding the plaintiff's capacity to perform work-related activities as a result of the symptoms she suffers in connection with her fibromyalgia is not inconsistent with the other evidence in the record. *See Preston,* 854 F.2d at 820 (discussing the process of diagnosis fibromyalgia, highlighted above). Indeed, there is very little other evidence in the record, besides the plaintiff's own testimony, discussed in greater detail below.

This case is somewhat similar to *Kalmbach*. In *Kalmbach*, the Sixth Circuit held that the ALJ erred in the treatment of the claimant's treating physician's opinions on the issue of fibromyalgia. 409 Fed. Appx. at 861. The ALJ discounted the opinion for two reasons: (1) because he determined that the opinion was unsupported by objective evidence and was based entirely on the claimant's subjective complaints and (2) because the determination of disability is reserved to the Commissioner. *Id.* The court quickly dismissed the second reason on grounds not relevant here. As to the first reason, the court discussed how fibromyalgia does not manifest in objective findings and that reliance on a lack of objective evidence is "beside the point." *Id.* at 862. The court also held that the ALJ failed to give good reasons for the rejection because the diagnosis of fibromyalgia was supported by medically acceptable clinical and diagnostic techniques, and there was no other

evidence and no medical opinion in the record contradicting the physicians' opinions. [2] *Id.*

Likewise, here, the ALJ's reliance on the lack of objective evidence supporting Dr. Marcus's opinion is of little relevance.  And, as noted there is no other medical opinion in the record contradicting Dr. Marcus's conclusions. Accordingly, the undersigned finds that the ALJ has not provided adequate support for the assertion that Dr. Marcus's opinion is inconsistent with the medical evidence in the case record.  Nor did the ALJ evaluate the other regulatory factors required to properly weigh medical opinions, such as the opinion's supportability and consistency with the record as a whole, length of the relationship between plaintiff and the treater and the treater's specialty.  *See Gayheart* at 378; *see Allen*, 2013 WL 5676254, at *13; 20 C.F.R. § 404.1527.  Therefore, the undersigned finds that the ALJ erroneously weighed the opinion of plaintiff's treating physician, Dr. Marcus, and thus recommends the case be remanded under sentence four of 42 U.S.C. § 405(g) to give the ALJ an opportunity to conduct the proper evaluation of the treating source opinion.

---

[2] Although in *Kalmbach* the ALJ did not recognize fibromyalgia as a severe impairment unlike the ALJ in this case, this does not alter the court's discussion of the treating physician rule and how the nature of fibromyalgia impacts the ALJ's obligations because a rejection of treating physician's limitations based on lack of objective evidence presents the same logical fallacy.  It seems unlikely that the court would have decided that the treating physician analysis was sufficient if the ALJ had merely determined that fibromyalgia was a severe impairment.

The Commissioner's citations to case law stating that an ALJ can consider objective evidence in fibromyalgia cases are unavailing.  First, in *Hayward v. Comm'r of Soc. Sec.*, 2015 WL 7749173, at *6 (E.D. Mich. Sept. 21, 2015), the ALJ did not rely only on normal objective findings in dismissing a doctor's opinion on the effects of the claimant's fibromyalgia.  Rather, the ALJ also considered the claimant's limited efforts to obtain primary care, the fact that the claimant was not taking medication for fibromyalgia for some time, and the fact that the record indicated improvement in her condition.  *Id.*  These facts are not present here.  Instead, the ALJ in this case discounted the opinion and Lucas's complaints based overwhelmingly on normal objective medical findings.  The only other medical evidence cited by the ALJ that could be characterized as arguably inconsistent with Dr. Marcus's opinion are the ALJ's observations that plaintiff reported neck pain of normally 3 out of 10 in April 2014, and plaintiff reported that she was doing better on her medications in July 2014.  Omitting the ALJ's improper inclusion of the normal objective medical findings, the latter two items amount to a scintilla of evidence rather than substantial evidence to support the ALJ's finding.   Further, in *Bouza v. Colvin*, 2017 WL 362670, at *5 (E.D. Mich. Jan. 13, 2017), fibromyalgia was not confirmed by objective testing, and the court cited *Hayward* for the proposition that the ALJ can consider objective evidence in a fibromyalgia case.  Whereas here, Lucas's fibromyalgia is a confirmed diagnosis

and the ALJ considered only lack of supporting evidence in discounting Dr. Marcus's opinion. Additionally, neither case was addressing the treating physician rule; both cases were discussing the ALJ's treatment of the claimant's complaints and her credibility.

The Commissioner also cited *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801 (6th Cir. 2008). In that case, the court reviewed the ALJ's decision to discount two of the plaintiff's treating physicians' opinions. The ALJ discounted the opinions because (1) some of the diagnoses forming the bases for the opinions lacked objective supportive; (2) the plaintiff's testimony about her activities of daily living were inconsistent with the opinions; (3) a consultative examining physician concluded that there was no evidence of physical limitation; and (4) a State agency reviewing physician who reviewed the record concluded that the plaintiff could sustain work. *Id.* at 805-06. The Court concluded that taken together, these reasons were good reasons to discount the opinions. Furthermore, the court stated in regard to the plaintiff's fibromyalgia diagnosis, that it agreed that the condition is not typically represented in objective findings, "[n]onetheless, a *diagnosis* of fibromyalgia does not automatically entitle Vance to disability benefits; particularly so here, where there is substantial evidence to support the ALJ's determination that Vance's fibromyalgia was either improving or, at worst, stable." *Id.* at 806 (emphasis in original). Again, the facts render the cases

distinguishable: the undersigned cannot say that the ALJ's treatment of Dr.

Marcus's opinion is supported by substantial evidence as the decision points to

scant affirmative medical evidence in the record; and there is no evidence of

improvement in Lucas's condition, save one notation of her doing better on

medication in July 2014 that was followed by an escalation of pain medications

thereafter, variously including the additions of Morphine Sulphate (which was not

effective), OxyContin and Methadone.  (Tr. 261-263, 312).  Further, unlike the

facts in *Vance*, and contrary to agency rules, no agency medical advisor reviewed

the record concerning her physical impairments.[3]

---

[3] The expert opinion requirement for equivalency can be satisfied by a signature on the Disability Determination Transmittal Form.  *Stratton*, 987 F.Supp.2d at 148 (citing SSR 96-6p, 1996 WL 374180, at *3 (The expert-opinion evidence required by SSR 96-6p can take many forms, including "[t]he signature of a State agency medical ... consultant on an SSA-831-U5 (Disability Determination and Transmittal Form).")).  In the instant record, there is a Disability Determination and Transmittal Form signed by a disability examiner only as to Lucas's mental impairments.  (Tr. 51).  The Disability Determination Explanation (DDE) is also only signed by the disability examiner and not any medical advisor.  (Tr. 58-60).  Dr. Williams-White also signed the Disability Determination and Transmittal forms as to Lucas's mental impairments. But, Dr. Williams-White is not qualified to assess Lucas's physical impairments or their effect in combination with her mental impairments  because Dr. Williams-White is not a medical doctor.  *See Greene-Howard v. Comm'r of Soc. Sec.*, 2017 WL 2118256, at *11 (E.D. Mich. May 15, 2017) (citing *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) (finding that a psychologist was not qualified to diagnose a claimant's physical conditions); *Byerley v. Colvin*, 2013 WL 2145596, at *11 (N.D. Ind. May 14, 2013) ("Because the psychologist who prepared the form did not consider physical impairments, it cannot be relied on as expert opinion that Plaintiff's combination of physical and mental impairments do not equal a Listing.")).  Though such an error can prompt *sua sponte* reversal if not found to be harmless, the Court declines to analyze whether reversal on this independent ground is appropriate here since the undersigned recommends reversal and remand on other grounds.  Notably, inasmuch as the ALJ will be reevaluating the opinion of plaintiff's treating physician, there is nothing to prevent the ALJ from obtaining such an opinion on remand to better assess the severity of plaintiff's impairments in combination.

Finally, in *Nowak v. Colvin*, 2017 WL 490156 (E.D. Mich. Feb. 7, 2017),

the ALJ determined that fibromyalgia was not a medically determinable

impairment because medical records did not reference "tender points" on the

plaintiff's body to suggest fibromyalgia, and treatment notes did not "detail the

characteristics of symptoms" typically associated with the condition.  *Id.* at *3.

The ALJ discounted the treating physician's opinion because treatment notes

reflected only complaints and diagnoses of insomnia, fatigue, and anxiety with

unremarkable clinical findings and the opinions were inconsistent with the

plaintiff's daily activities.  The Court found these reasons to be good reasons.  *Id.*

Further, as to the ALJ's credibility determination, the court agreed with the ALJ

that the claimant's daily activities were inconsistent with her claims of debilitating

pain.  *Id.*  Here, of course, the ALJ found Lucas's fibromyalgia to be a severe

impairment, and thus consideration of the effects of her condition aside from the

normal objective findings is necessary in this case.

To be clear, the court does not suggest that Lucas's mere diagnosis of

fibromyalgia means that she is disabled.   Rather, the undersigned suggests that

the ALJ erred in discounting the treating physician's opinion as inconsistent with

the medical record essentially based on a lack of corroborating objective medical

findings.  As noted, there is no other medical opinion on Lucas's physical

impairments with which to compare Dr. Marcus's opinion.[4]  Thus, in this case, it appears to be a mischaracterization to say that Dr. Marcus's opinion is inconsistent with the medical evidence.

This error alone warrants remand, but the error is further compounded by the ALJ's assessment of the severity of Lucas's impairments in light of her daily activities.  In evaluating Lucas's allegations of disabling symptoms and limitations, the ALJ stated that, despite her complaints of pain, on examination she "consistently presented with a normal gait, normal motor strength, non-tender extremities, normal sensation, and normal musculoskeletal range of motion."  (Tr. 17).  Again, reliance on normal objective findings characterized as a lack of objective medical evidence to prove the severity of fibromyalgia is improper. *See Rogers*, 486 F.3d at 448 (citing *Canfield v. Comm'r of Soc. Sec.,* 2002 WL 31235758, at *1 (E.D. Mich. Sept.13, 2002) (it would be "nonsensical to discount a fibromyalgia claimant's subjective complaints of pain based upon lack of objective medical evidence, as such evidence is generally lacking with fibromyalgia

---

[4] Only a single decision maker (SDM) offered an opinion on Lucas's physical RFC.  (Tr. 59-60).  Once the claimant's application reaches the ALJ, however, the SDM's assessment is no longer relevant to the determination of disability.  *White v. Comm'r of Soc. Sec.*, 2013 WL 4414727 (E.D. Mich. Aug. 14, 2013).  Social security regulations provide that an ALJ may consider evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment, and may also consider opinions from certain "other sources" to assess "the severity of the individual's impairment(s) and how it affects the individual's ability to function."  SSR 06–03p; 20 C.F.R. § 404.1513.  SDMs, as laypersons, are not qualified to provide medical evidence regarding a claimant's impairment.  *See* 20 C.F.R. § 404.1513(a)-(c).

patients")).  The ALJ also cited inconsistency between Lucas's stated activities and the record.  However, the ability to participate in normal activities is different from the ability to engage in full-time work.  *See Rogers*, 486 F.3d at 248.  And to be accurate, Lucas stated that on good days she could clean and do laundry, but on bad days she hurts too much to do anything; she has bad days about 50% of the time.  (Tr. 41, 171).  She said she shops for food and very rarely shops for other things.  (Tr. 172).  In regard to her hobbies and interests, she stated that she likes to read, bowl, bike, do yoga, walk in parks, and dance.  (Tr. 173).  However, she clarified that she does yoga as often as she can but can do the other activities only *rarely* except for reading and she can bowl once or twice a month.  (*Id.*).  In *Rogers*, the claimant was capable of engaging in similar tasks (she could drive, clean her apartment, do laundry, care for two dogs and do stretching exercises among other things), but the court determined that these activities done intermittently are not comparable to typical work activities.  486 F.3d at 248-49.

Whether the ALJ's discussion constitutes reversible error is of no practical consequence here, as on remand the Commissioner will necessarily have to re-assess Lucas's subjective complaints and ability to engage in activities in re-evaluating her treating physician's opinion.  *See Wladysiak v. Comm'r of Soc. Sec.*, 2013 WL 2480665, at *13 (E.D. Mich. June 10, 2013) ("Given that it is simply impossible for the ALJ to re-evaluate the treating physician evidence without

evaluating plaintiff's pain and other credibility issues, the undersigned concludes that plaintiff's credibility must be re-assessed as well."); *Laxton v. Astrue,* 2010 WL 925791, *6 (E.D.Tenn.2010) ("[B]ecause of the subjective nature of fibromyalgia, the credibility of a claimant's testimony regarding her symptoms takes on substantially increased significance."); *see also Rogers,* 486 F.3d at 243 ("[G]iven the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important.").   In light of the foregoing conclusions, Lucas's other point of error need not be more fully addressed.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, and that the findings of the Commissioner be **REVERSED AND REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 21, 2019                    s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States Magistrate Judge